**In re Lynwood D. HALL and Brenda A. Hall, Debtors.**

**Lynwood D. Hall, Brenda Hall, Appellants,**

v.

**United States of America, Appellee.**

**No. CV–07–679–TUC–DCB.**

**Bankruptcy No. 05–4423–TUC–EWH.**

**BAP No. 07–1441.**

United States District Court, D. Arizona.

Aug. 6, 2008.

---

858

Clifford B. Altfeld, Altfeld Battaile & Goldman, P.C., Tucson, AZ, for Debtors.

Alan R. Costello, Costello Law Firm, Phoenix, AZ, for trustee.

## ORDER

David C. BURY, District Judge.

This is an appeal from a bankruptcy decision, pursuant to 28 U.S.C. § 158(a)(1), entered in *In re Hall,* BK–05–4423–TUC–EWH.

## FACTUAL AND PROCEDURAL BACKGROUND

The Bankruptcy Court in *In re Hall,* 376 B.R. 741 (Bankr.D.Ariz.2007), held that because a Chapter 12 estate is not a separate taxable entity, it cannot incur a federal capital gains tax liability arising from the postpetition sale of farm assets and, therefore, such liability is not a claim entitled to priority which may be denied full payment under a Chapter 12 plan and treated as an unsecured claim that is not entitled to priority.

The Debtors are family farmers whose bankruptcy filing was governed by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) and 11 U.S.C. § 1222(a)(2)(A). After the filing, the Bankruptcy Court granted Debtors' motion to sell their 320–acre farm for the sum of $960,000. The sale of the farmland generated a capital gains tax of about $29,000. Debtors' plan proposed to include that tax liability as an unsecured claim, which would be paid in full to the extent that funds were available; otherwise it would be paid pro rata with the other similarly situated claims, and the balance discharged. Relying on *In re Knudsen,* 356 B.R. 480 (Bankr.N.D.Iowa 2006), *aff'd in part and rev'd in part,* 389 B.R. 643 (N.D.Iowa 2008), the Debtors argued that, under § 1222(a)(2)(A), taxes generated by the sale of farming assets are treated as unsecured debt and are not entitled to priority if the debtor receives a discharge.

The Bankruptcy Court rejected the conclusion in *Knudsen* and agreed with the Bankruptcy Court in *In re Brown,* 2006 WL 3370867 (Bankr.D.Mass.2006). The Bankruptcy Court noted that, under § 1222(a)(2)(A), a Chapter 12 plan must provide for the full payment, in deferred cash payments, of all claims entitled to priority under 11 U.S.C. § 507 unless the claim is owed to a governmental unit and arises out of the disposition of any farm asset used in the debtor's farming operation, in which case the claim must be treated as a nonpriority unsecured claim. This provision applies only if a debtor receives a discharge. The Bankruptcy Court said that, under the plain language of § 1222(a)(2), in order to qualify for treatment as an unsecured claim, the claim must fall within one of the priority categories in § 507. The only two potential categories under which taxes on a postpetition sale might fall are if the tax is an administrative expense (§ 507(a)(2)) or is an allowed unsecured claim of a governmental unit (§ 507(a)(8)).

The Bankruptcy Court went on to find that Section 507(a)(8) did not apply because that section applies exclusively to claims that arise from taxes owed prepetition. Further, § 507(a)(2) did not apply because it identifies as a priority administrative expenses allowed under section 503(b). In order for a tax to qualify as an administrative expense under § 503(b)(1)(B)(i), the tax must be incurred by the estate and not be a tax of a kind specified in § 507(a)(8). The question was whether the capital gains tax arising from the postpetition sale of the farmland is a tax "incurred" by the estate. The Bankruptcy Court agreed with the Internal Revenue Service (IRS) that the taxes in this case were not incurred by the estate because a Chapter 12 estate is not a separate taxable entity, and it cannot incur a tax liability constituting an administrative expense. See 26 U.S.C.A. §§ 1398, 1399.

Further, the Bankruptcy Court found that there is no provision for filing a claim for postpetition taxes in a Chapter 12 bankruptcy. The Court read Section 503(b)(1)(B)(i)in conjunction with §§ 1398 and 1399 of the Internal Revenue Code and resolved that there is no separate taxable entity created when an individual commences a case under Chapter 12. Consequently, the capital gains tax arising from the postpetition sale of the farmland cannot be a tax incurred by the Chapter 12 estate under § 503(b)(1)(B)(i). Because the postpetition capital gains tax is not entitled to priority under § 507, it does not fall within the exception carved out by § 1222(a)(2)(A), which creates an exception for priority claims arising from the prepetition sale, transfer, or exchange of farm assets. Because the taxes did not qualify as an administrative expense under § 503(b) and were not entitled to priority under § 507, they did not fall within the purview of the § 1222(a)(2)(A) exception and could not be treated as an unsecured claim that is not entitled to priority. The

Bankruptcy Court sustained the IRS's objection to the Debtors' Chapter 12 plan.

On December 21, 2007, the Debtors filed an appeal from the Bankruptcy Court's decisions entered October 3, 2007 and November 20, 2007. On February 21, 2008, Debtors/Appellants' opening brief was filed. On February 21, 2008, Appellee USA's brief was filed. On March 5, 2008, Appellee State of Arizona's brief was filed. On March 7, 2008, Debtors/Appellants' reply brief was filed. On May 12, 2008, oral argument was presented to the Court by the parties and the matter was taken under advisement.

## STANDARD OF REVIEW

■ There are no questions of fact. The issue on appeal is an issue of law and is subject to de novo review by the District Court. See In re Olshan, 356 F.3d 1078, 1083 (9th Cir.2004); In re Price, 353 F.3d 1135, 1138 (9th Cir.2004); In re Summers, 332 F.3d 1240, 1242 (9th Cir.2003). The Bankruptcy Court's interpretation of the bankruptcy code is reviewed de novo by the District Court. See In re DeVille, 361 F.3d 539, 547 (9th Cir.2004).

## ISSUE

The issue to be resolved is whether or not, in a Chapter 12 bankruptcy, "the taxes incurred from the post-petition sale of a debtor's real property that is used in farming may be treated as a liability of the estate and discharged under 11 U.S.C. 1222(a)(2)(A) or whether the debtor in a Chapter 12 bankruptcy is personally liable for taxes incurred from the post-petition sale of farming real property." (Debtor's Opening Brief at 2.)

## DISCUSSION

■ As indicated by the Court during oral argument, the Court continues to be inclined in favor of the Debtors' position

and does find that, as in *In re Knudsen,* 389 B.R. 643 (N.D.Iowa 2008), *In re Dawes,* 382 B.R. 509 (Bankr.D.Kan.2008), and *In re Schilke,* 379 B.R. 899 (Bankr. D.Neb.2007) (all Chapter 12 family farmer bankruptcies addressing the same issue as presented herein), the Halls may treat post-petition income taxes incurred from the post-petition sale of their farm as a liability of the estate, dischargeable under § 1222, and the plan may propose payment of such expenses by the estate. This Court is not persuaded by an application of the analysis and holding in *In re Brown,* 2006 WL 3370867 (Bankr.D.Mass.2006), a chapter 13 bankruptcy which did not address § 1222 and applied an IRS interpretation of bankruptcy policies.

Appellants contend that the Congress intended to offer relief to the farmer by the amendment and inclusion of § 1222(a)(2)(A), which is supported by a reading of the legislative history of this amendment, as follows:

Chapter 12. Adjustment of Debts of a Family Farmer or Fisherman with Regular Annual Income

§ 1222. Contents of plan

(a) The plan shall—

\* \* \*

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless—

(A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge.

Claims entitled to priority as described in Section 507, are as follows:

(a) The following expenses and claims have priority in the following order:

\* \* \*

(2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

\* \* \*

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

The *Hall* decision specifically found, as follows,

Perhaps Congress meant to provide relief for postpetition taxes, but that is not what the statute provides. "It is well established that 'when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.' " *Lamie v. United States Trustee,* 540 U.S. at 534[, 124 S.Ct. 1023] (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)) (other citations omitted). In this case, the disposition of the text is not absurd: as written, § 1222(a)(2)(A) creates an exception for priority claims arising from the *prepetition* sale, transfer or exchange of farm assets. That is what § 1222(a)(2)(A) provides and no more. It is beyond the province of this Court to provide "what we might think … is the preferred result." *Id.* at 542[, 124 S.Ct. 1023] (quoting *United States v. Granderson,* 511 U.S. 39, 68[, 114 S.Ct. 1259, 127 L.Ed.2d 611] (1994)).

Because the taxes arising from the post-petition sale of the farm do not qualify as an administrative expense under § 503(b) and are not entitled to priority under § 507, they do not fall within the purview of § 1222(a)(2)(A)'s exception and may not "be treated as an unsecured claim that is not entitled to priority."

*In re Hall*, 376 B.R. at 747.

The government argued and the *Hall* Court agreed that the statute is not ambiguous and does not need clarification, and as such does not require interpretation or review of legislative history. The *Hall* decision followed the *Brown* analysis:

Instead, this Court agrees with the approach of the bankruptcy court in *In re Brown*, 2006 WL 3370867 (Bankr. D.Mass.Nov.20, 2006), which found that a Chapter 13 estate cannot be held liable for capital gains tax because it does not exist as a taxable entity ... The Chapter 13 debtor argued that capital gains tax arising from the postpetition sale of his interest in rental property should be treated as an administrative claim for which the estate was liable. Since the debtor's interest in the property was property of the estate when it was sold, he contended the estate incurred the tax. *Id.* at *1. The debtor sought to have the taxes paid through the plan or have the Chapter 13 Trustee release funds to the debtor to pay the taxes. The Chapter 13 Trustee agreed that the taxes should be included in the plan. A creditor objected, arguing, *inter alia*, that § 1305 does not require a taxing authority to file a proof of claim; instead, a tax creditor may pursue its claim against the debtor after the case is closed.

\* \* \*

This Court agrees with the *Brown* court that § 503(b)(1)(B)(i) must be read in conjunction with 26 U.S.C. §§ 398 and 1399 of the Internal Revenue Code. The starting point for interpreting a statutory provision is the language of the statute itself. *Lamie v. United States Trustee*, 540 U.S. 526, 534[, 124 S.Ct. 1023, 157 L.Ed.2d 1024] (2004). However, the statutory language must also be viewed in context: "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341[, 117 S.Ct. 843, 136 L.Ed.2d 808] (1997) (citations omitted). In this case, the context includes the interplay between the Bankruptcy Code, as amended by BAPCPA, and the Internal Revenue Code of 1986. The Internal Revenue Code treats a Chapter 12 estate (and Chapter 13 estate) differently from an estate arising under Chapter 7 or 11. There is no separate taxable entity created when an individual commences a case under Chapter 12 or 13. 26 U.S.C. §§ 1398, 1399. Consequently, the capital gains tax arising from the postpetition sale of the farm land cannot be a tax "incurred" by the Chapter 12 Estate under § 503(b)(1)(B)(i) because it does not exist as a separate taxable entity. 26 U.S.C. §§ 1398, 1399. In turn, because the postpetition capital gains tax is not entitled to priority under § 507, it does not fall within the exception carved out by § 1222(a)(2)(A).

This construction of § 1222(a)(2), as amended by BAPCPA, is reinforced by the familiar maxim that courts are to "assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32[, 111 S.Ct. 317, 112 L.Ed.2d 275] (1990). When BAPCPA was enacted in 2005, this Court must assume that Con-

gress was aware that a Chapter 12 estate is not a separate taxable entity. *In re Hall*, 376 B.R. at 745–46.

The Courts in *In re Schilke, In re Dawes*, and *In re Knudsen* found in favor of the Debtor's position that the intent of the amendment to the Bankruptcy Act was to help family farmers through a Chapter 12 bankruptcy. The Debtor asks the Court to find (1) that taxes incurred from the post-petition sale of a debtor's real-property that is used in farming may be treated as a liability of the estate and discharged under 11 U.S.C. § 1222(a)(2)(A); and, (2) that the debtors in a Chapter 12 bankruptcy are not personally liable for taxes incurred from the post-petition sale of farming real-property. The Debtor argues that "Section 1222 provides that a government claim (such as a claim by the federal government for capital-gain taxes) is stripped of its priority status and treated as an unsecured claim if the claim arises from the sale or other disposition [of] a farm asset." (Opening Brief at 6.)

The Appellant/Debtor urges the Court to consider and apply the legislative history of 11 U.S.C. § 1222(a)(2)(A) to rule in their favor and overrule the Bankruptcy Court's decision. The government argues that the Court need not consider the legislative history because the language of the statute itself is not ambiguous on its face. Appellant urges that three cases that are contrary to the bankruptcy decision in *Hall*, did consider and apply legislative history *(In re Dawes, In re Schilke, In re Knudsen)*. "In light of the several courts' divergent conclusions, there must be some disconnect between a strict reading of the statute and its intended purpose. The governments' pleas to this Court to ignore the purpose of the law should not be heeded. This Court ignores the legislative history (and sound authority from several other jurisdictions) at the possible expense of denying the law its remedial purpose." (Debtor Reply at 8.)

This Court concurs with the application of *Knudsen* in *Dawes:*

The IRS contends this Court should not follow *Knudsen* because it improperly relied upon [*In re L.J.O'Neill Shoe Co.*, 64 F.3d 1146 (8th Cir.1995)] It points out that in *O'Neill Shoe* administrative claim status of the capital gains from postpetition dispositions of assets was not in dispute, that amendment to § 507 by the BAPCPA abrogated the ruling of *O'Neill Shoe*, and that *O'Neill Shoe* was a Chapter 11 rather than a Chapter 12 case. None of these matters cause the Court to reject the holding of *Knudsen*. The fact that administrative claim status was not litigated supports this Court's view that the allowance of such claims as entitled to administrative priority is so well established, even for Chapter 11 corporate debtors, that it is seldom litigated. Further, as thoroughly examined above, this Court concludes that Chapter 12 postpetition capital gains taxes are administrative expenses based upon Congressional intent without reliance on either *Knudsen* or *O'Neill Shoe*. Second, the amendment to § 507 after the *O'Neill Shoe* decision had to do with eighth priority claims, a matter not in issue in this case. Third, the fact that *O'Neill Shoe* is a Chapter 11 corporate debtor case means that in that case, as in this case, the filing of the petition did not create a separate taxable estate. This supports Debtors' argument that the fact that the filing of a Chapter 12 case does not create a new taxpayer does not defeat administrative claim status for the taxes in issue.

The Court respectfully declines to follow *Hall*, the § 1222(a)(2)(A) case which adopted the IRS' arguments. This Court questions the *Hall* court's reliance

on the "maxim that the courts are to 'assume that Congress is aware of existing law when it passes legislation.'" Although IRC §§ 1398 and 1399 were in place at the time of BAPCPA, this Court has been unable to find any Chapter 12, or even any Chapter 7 or Chapter 11 case, where those IRC provisions were held to be relevant to the construction of the definition of administrative claim in § 503(b)(2)(B)(i). It is highly doubtful that Congress could have foreseen the impediment to the application of § 1222(a)(2)(A) relied upon by the IRS in this case.

*In re Dawes,* 382 B.R. at 516–17.

This Court also concurs with and adopts the analysis in *Schilke:*

The *Knudsen* court acknowledged that the statute is ambiguous, but stated "I believe that Congress intended to help farmers reorganize and stay in business by lessening the burden of prepetition and postpetition taxes arising from the sale of assets used in the farmer's farming operation ..." *In re Knudsen,* 356 B.R. at 491.

The *Knudsen* court also relied on legislative history with respect to a bill that preceded the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which contained a proposed amendment to § 1222(a)(2) identical to the change that was ultimately made in BAPCPA. Senator Grassley, who introduced that bill, made the following comments:

"Safety 2000" [the predecessor bill] also helps farmers to reorganize by keeping the tax collectors at bay. Under current law, farmers often face a crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs ... Under the bankruptcy code, the I.R.S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay the I.R.S. in full, then he can't keep his farm. That isn't sound policy. Why should the I.R.S. be allowed to veto a farmer's reorganization plan? "Safety 2000" takes this power away from the I.R.S. by reducing the priority of taxes during proceedings. This will free up capital for investment in the farm, and help farmers stay in the business of farming. 145 Cong. Rec. S750–02, 1999 WL 20426 (Jan. 20, 1999) (statement of Sen. Grassley on S.260).

*In re Schilke,* 379 B.R. at 902.

Finally, the United States District Court for the District of Iowa affirmed the bankruptcy court's decision in *Knudsen,* finding that "[t]he bankruptcy court's fundamental error, this court finds, was accepting the IRS's characterization of the pertinent provisions as federal income tax provisions found in the Bankruptcy Code, when they are properly understood as bankruptcy provisions to be construed in accordance with the Bankruptcy Code and bankruptcy policy to promote the effective reorganization of family farming operations." *In re Knudsen,* 389 B.R. at 680–81.[1]

### CONCLUSION

After a de novo review, this Court finds that it concurs with the results in *In re Knudsen, In re Dawes, and In re Schilke.* The legislative history relating to an earlier bill to amend § 1222(a)(2) in an identical manner clearly shows that the language used was intended to allow the debtor to use the amendments to § 1222(a)(2) for taxes generated during the bankruptcy reorganization from the sale of assets used in a farming operation. The Court finds that

---

1. *See also Towers v. United States,* 64 F.3d 1292, 1298–1301 (9th Cir.1995)(Chapter 11 bankruptcy).

the Halls, family farmers and Chapter 12 Debtors, may treat their postpetition capital gains taxes derived from their postpetition sale of real property as an administrative expense and the Halls' plan may treat the claim as an unsecured claim not entitled to priority.

Accordingly,

IT IS ORDERED that the decision of the Bankruptcy Court is REVERSED and the action is REMANDED with instructions to conform with this decision. The Clerk of the Court is directed to close this appeal and return the matter to the Bankruptcy Court.