**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Appellant,*

v.

BRENDA HALL; LYNWOOD D. HALL,
                    *Appellees.*

No. 08-17267

D.C. No.
4:07-cv-00679-DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
February 10, 2010—San Francisco, California

Filed August 16, 2010

Before: Diarmuid F. O'Scannlain, Stephen S. Trott and
Richard A. Paez, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Paez

**COUNSEL**

Patrick J. Urda, Tax Division, Department of Justice, filed the briefs and argued the cause for the appellant. John A. DiCicco, Acting Assistant Attorney General, and Bruce R. Ellisen, Tax Division, Department of Justice, were on the briefs. Diane J. Humetewa, United States Attorney, served as Of Counsel.

Clifford B. Altfeld, Altfeld Battaile & Goldman, P.C., Tuscon, Arizona, filed the brief and argued the cause for the appellees. Eugene Vamos, Altfeld Battaile & Goldman, P.C., Tuscon, Arizona, was on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether and to what extent debtors must pay federal income tax on the gain from the sale of their farm during bankruptcy proceedings.

I

A

Lynwood and Brenda Hall filed a petition under chapter 12 of the Bankruptcy Code, which governs family farmer bank-

ruptcies, in August 2005. Shortly thereafter, the Halls moved to sell their farm for $960,000, which the bankruptcy court approved.

In December 2005, the Halls proposed a plan of reorganization, under which they sought to pay off their outstanding liabilities using the proceeds from the sale. The Internal Revenue Service ("IRS") objected to the proposed plan, asserting a federal income tax of $29,000 on the capital gain from the sale. The Halls then amended their proposed plan to treat the $29,000 tax as an unsecured claim to be paid "to the extent funds are available," with "the balance discharged." The IRS again objected.

## B

The bankruptcy court sustained the IRS's objection. *In re Hall*, 376 B.R. 741 (Bankr. D. Ariz. 2007). The district court reversed. *Hall v. United States* (*In re Hall*), 393 B.R. 857 (D. Ariz. 2008). The United States timely appealed.

## II

The United States contends that the district court erred by reversing the bankruptcy court's decision to sustain the IRS's objection, asserting that the tax on the gain from the sale of a farm during bankruptcy is not dischargeable.

## A

**[1]** We begin, as always, with the text of the applicable statute. Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201-31, allows family farmers and fishermen to reorganize their business affairs while keeping creditors at bay. But the benefits of this arrangement come with responsibilities. In chapter 12 bankruptcy cases, the debtor must file a plan of reorganization, *id*. § 1221, and the contents of that plan are

prescribed in section 1222(a)(1)-(4). In particular, section 1222(a)(2)(A) states:

> The plan shall . . .
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 unless
>
> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge . . . .

Thus debtors may well treat certain claims owed to a governmental unit arising from the sale of farm realty as payable in less than full, and dischargeable.

**[2]** But, by its terms, subsection (2)(A) applies only to "claims entitled to priority under section 507 [of the Bankruptcy Code]." Section 507, in turn, lists numerous categories of claims that receive special treatment in bankruptcy. *Id.* § 507(a)(1)-(10). Two of the categories include taxes. The first such category, section 507(a)(8), includes various taxes incurred "on or before the date of the filing of the petition," *i.e.*, "prepetition." *E.g.*, *id.* § 507(a)(8)(A) (involving prepetition income taxes).[1] Indeed, there is no dispute that section

---

[1] The other types of taxes enumerated in section 507(a)(8) also clearly are taxes incurred prepetition, *id.* § 507(a)(8)(B) ("property tax incurred before the commencement of the case"); *id.* § 507(a)(8)(D) ("employment tax on a wage . . . earned from the debtor before the date of the filing of the petition"); *id.* § 507(a)(8)(E)(i)-(ii) ("excise tax on . . . a transaction occurring before the date of the filing of the petition"); *id.*

1222(a)(2)(A) allows chapter 12 debtors to treat *taxes* incurred by selling farm assets *before* the filing of a bankruptcy petition as payable in less than full and dischargeable: a tax incurred prepetition is a claim "entitled to priority under section 507" by way of section 507(a)(8). Here, by contrast, the tax was incurred *after* the filing of the petition, *i.e.*, "postpetition."

**[3]** The second category that includes taxes, section 507(a)(2), consists of "administrative expenses allowed under section 503(b)." *Id.* § 507(a)(2). This provision arguably includes the tax on the gain from the sale of the farm because section 503(b), which is cross-referenced by section 507(a)(2), allows for "administrative expenses . . . including . . . any *tax* . . . incurred by the estate." *Id.* § 503(b)(1)(B)(i) (emphasis added).

**[4]** Which, of course, raises the question whether the postpetition tax on the sale of the farm at issue in this case was "incurred by the estate." We are satisfied that the answer is

§ 507(a)(8)(F)(i)-(iii) ("customs duty arising out of the importation of merchandise . . . before the date of the filing of the petition"); *id.* § 507(a)(8)(G) ("a penalty . . . for actual pecuniary loss" related to claims in (A) through (F)), with the exception of § 507(a)(8)(C)—involving so-called "trust fund taxes," *i.e.*, taxes withheld from employees—which does not include clear language limiting its reach to prepetition taxes. That absence has been interpreted, however, as indicating that "trust fund taxes" receive priority regardless of the amount of time that they predate the petition, unlike the other types of taxes listed in § 507(a)(8), *e.g.*, *Shank v. Wash. State Dep't of Revenue* (*In re Shank*), 792 F.2d 829, 831 (9th Cir. 1986); *In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752, 756 (7th Cir. 1991), and not as indicating that § 507(a)(8)(C) applies to postpetition taxes. *Collier on Bankruptcy* ¶ 507.11[1] (15th ed. 2009) ("An eighth priority is granted under section 507(a)(8) to . . . certain kinds of prepetition taxes [including] trust fund taxes."); *id.* ¶ 507.11[4] ("[I]n contrast to all of the other portions of section 507(a)(8), there is no time limit applicable to trust fund taxes."). In any event, this case does not involve "trust fund taxes."

no. The Internal Revenue Code provides that a chapter 12 estate cannot incur taxes. Title 26 U.S.C. § 1399 states that "no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code"—the bankruptcy title—"[e]xcept in any case to which section 1398 applies." Section 1398 applies only to "any case under chapter 7 (relating to liquidations) or chapter 11 (relation to reorganizations) of title 11 of the United States Code in which the debtor is an individual." 26 U.S.C. § 1398. It follows that a chapter 12 estate is not a taxable entity.

**[5]** Since the chapter 12 estate is not a taxable entity, the chapter 12 estate cannot "incur" a tax. We agree with those courts that have reached the same conclusion for the same reason with respect to chapter 13 estates, which are treated identically to chapter 12 estates by sections 1398 and 1399. *In re Whall*, 391 B.R. 1, 5-6 (Bankr. D. Mass. 2008); *In re Brown*, 2006 WL 3370867, *3 (Bankr. D. Mass. Nov. 20, 2006); *In re Gyulafia*, 65 B.R. 913, 916 (Bankr. D. Kan. 1986). Because a chapter 12 estate cannot "incur" a tax, it cannot get the benefit of section 1222(a)(2)(A), which provides that the tax on the gain from the sale of a farm during bankruptcy is dischargeable and payable in less than full.

**[6]** We recognize that our conclusion that the chapter 12 estate cannot "incur" a tax necessarily implies that the debtor is responsible for any taxes incurred after the bankruptcy petition is filed in a chapter 12 case because the chapter 12 trustee, the only other potentially responsible party, is not liable for the tax. Section 1398 provides that in chapter 7 and individual chapter 11 cases, where there can be "taxable income of the estate," any "tax . . . shall be paid by the trustee." 26 U.S.C. § 1398(c)(1). The omission of any provision in the U.S. Code requiring the trustee to pay taxes in cases to which section 1398 does not apply, such as chapter 12 cases, implies that the trustee does not pay taxes in such cases. *In re Lindsey*, 142 B.R. 447, 448 (Bankr. D. Okla. 1992) ("It is clear that, pursuant to 26 U.S.C. § 1398 and 1399, the stand-

ing Chapter 12 trustee neither files a return nor pays federal income tax . . . .”). That makes sense: since the chapter 12 estate is not a taxable entity and thus there cannot be “taxable income of the estate,” 26 U.S.C. § 1398(c)(1), and the debtor remains in possession in chapter 12 bankruptcy absent extraordinary circumstances, 11 U.S.C. § 1203, the trustee is not associated with any taxes. *See Holywell Corp. v. Smith*, 503 U.S. 47 (1992) (shifting tax burden to trustee in corporate chapter 11 case because chapter 11 bankruptcy created a separate entity overseen by the trustee).[2]

B

The Halls primarily rely on *Knudsen v. IRS*, 581 F.3d 696 (8th Cir. 2009), in which chapter 12 debtors proposed a plan to sell farmland and farm equipment to fund their reorganization. Like the case before us, the plan treated the income taxes arising from these postpetition sales as unsecured claims under section 1222(a)(2)(A) and thus dischargeable. *Id.* at 701. The IRS objected there as well. *Id.* But the Eighth Circuit ruled for the debtors, holding that “§ 1222(a)(2)(A) applies to the *postpetition* sale of farm assets,” so that the taxes arising

---

[2]To be clear, we do not hold that the postpetition tax here is payable in full because of section 1222(a)(2)’s full payment rule for claims treated by the plan. That would be inconsistent with our conclusion that the postpetition tax here does not qualify for the section 1222(a)(2)(A) exception to the full payment rule on the ground that the tax does not fall within section 507. Rather, the tax is payable in full because it is incurred and owed by the debtor outside of the plan, as discussed in the text accompanying this footnote. It is of no matter that the debtors attempted to include the tax in their plan, because the Bankruptcy Code places limits on the liabilities a plan may address. Chapter 12 plans bind “each creditor,” 11 U.S.C. § 1227, and a “creditor” is defined, in relevant part, as “an entity that has a claim against the debtor that *arose at the time of or before the order for relief* concerning the debtor.” 11 U.S.C. § 101(10)(A) (emphasis added). Because the tax in this case arose after the order for relief, *i.e.*, the automatic stay that commences upon the filing of a bankruptcy petition, 11 U.S.C. § 301(b), the debtors cannot avoid the tax simply by listing it in their proposed plan.

from such sale could be treated as unsecured claims and dischargeable. *Id.* at 710 (emphasis added). In its view, the taxes arising from the postpetition sale met the requirement in section 1222(a)(2)(A) that they be a "claim[ ] entitled to priority under section 507." *Id.* at 708-09. Specifically, the court held that the taxes fell under section 507(a)(2) as administrative expenses because they satisfied the relevant definition of administrative expenses in section 503(b)—"tax . . . incurred by the estate"—which means merely "tax . . . incurred postpetition." *Id.* at 708-09. The court expressly declined to give weight to Internal Revenue Code sections 1398 and 1399 when interpreting the phrase "tax . . . incurred by the estate," and took comfort in the fact that the Bankruptcy Code did not indicate that a chapter 12 estate could not incur taxes. *Id.* at 708-10.[3] We are not persuaded.

1

The Halls first argue, relying on the cases collected by *Knudsen*, 581 F.3d at 709, that "incurred by the estate" in section 503(b) means "incurred postpetition." In their view, it does not matter whether the estate can incur a tax because the key is when the tax was incurred.

**[7]** It is true that the cases the Halls and *Knudsen* cite state that all taxes "incurred by the estate" are "incurred postpetition." They must: because an estate does not exist until after a bankruptcy petition is filed, any taxes an estate incurs are necessarily incurred postpetition. But just because all apples are fruits does not mean all fruits are apples. Likewise, although all taxes "incurred by the estate" are "incurred postpetition," not all taxes "incurred postpetition" are "incurred by the estate." The cases the Halls and *Knudsen* cite simply do not support the Halls' view, as a close reading of the lan-

---

[3]The Tenth Circuit Bankruptcy Appellate Panel recently agreed with the Eighth Circuit's decision in *Knudsen* without further analysis. *IRS v. Ficken* (*In re Ficken*), 430 B.R. 663, 670-72 (10th Cir. B.A.P. 2010).

guage in the cases indicates. *See, e.g.*, *W. Va. State Dep't of Tax & Revenue v. IRS* (*In re Columbia Gas Transmission Corp.*), 37 F.3d 982, 984 (3d Cir. 1994) ("The priority for taxes 'incurred by the estate' extends *only* to taxes 'incurred' postpetition." (emphasis added)); *In re Ne. Ohio Gen. Hosp. Ass'n*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991) ("Taxes incurred by the estate are administrative expenses pursuant to Section 503(b)(1)(B)(i). Because the estate does not exist pre-petition, priority treatment is *limited* to taxes incurred post-petition." (emphasis added)).[4]

2

The Halls next argue, again relying on *Knudsen*, 581 F.3d at 709, that the fact that a bankruptcy estate exists and can hold property means that it can incur taxes. Although the Halls admit that sections 1398 and 1399 of the Internal Revenue Code state a contrary view by classifying only certain estates in certain chapters as taxable entities, they believe all estates, regardless of the chapter under which they exist, can incur taxes. The Halls argue that the *Internal Revenue* Code should not be used to "frustrate" the *Bankruptcy* Code because Congress was not aware of the relevance of the former when drafting the latter.

**[8]** We disagree. Neither the Halls nor *Knudsen* cites any provision in chapter 12 stating that a bankruptcy estate has the inherent ability to incur taxes. That is because there is none.

---

[4]We note that the United States is incorrect that these cases are distinguishable on the ground that they involve chapter 11, as opposed to chapter 12, because these cases involve *corporate* chapter 11 debtors, as opposed to *individual* chapter 11 debtors. Sections 1398 and 1399 of the Internal Revenue Code treat corporate chapter 11 debtors and chapters 12 and 13 debtors the same. 26 U.S.C. § 1398 ("apply[ing] to any case under chapter 7 . . . or chapter 11 . . . in which the debtor is an *individual*") (emphasis added); *id.* § 1399 ("Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a [bankruptcy] case . . . .").

*Knudsen* quotes section 1207 of the Bankruptcy Code to support its view indirectly. 481 F.3d at 710. But that section merely includes as property of the estate whatever the debtor acquires postpetition. It does not contain the slightest suggestion that the ability to retain property implies the ability to incur taxes. Nor do the Halls or *Knudsen* cite any authority for the proposition that the Bankruptcy Code as a whole indicates that all estates, regardless of chapter, have the inherent ability to incur taxes. That is because the code does not institute a singular concept of the bankruptcy estate regardless of chapter. In fact, the concept of the bankruptcy estate in the Bankruptcy Code is so amorphous that even such basic details as the contents of the estate vary within the code depending on the chapter,[5] and within chapters depending on the nature of the debtor.[6]

**[9]** In any event, we must read the United States Code as a whole. Title 26 U.S.C. §§ 1398 and 1399 indicate that a chapter 12 bankruptcy estate cannot incur taxes. It does not matter that these sections appear in the Internal Revenue Code as distinguished from the Bankruptcy Code. We are to "assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). In fact, we need not even risk the error of such assumption in this case because Congress has indicated repeatedly that it is aware that the taxable entity provisions in the Internal Revenue Code are relevant to the Bankruptcy Code. At the same time Congress enacted Bankruptcy Code section 503(b), it also enacted section 346, which deals with the relationship between the Internal Revenue Code's taxable

---

[5]*Compare* 11 U.S.C. § 541 (outlining general rules for property of estate), *id.* §§ 721-28 (outlining specific rules for chapter 7), *id.* § 1115 (same for chapter 11), *and id.* § 1207 (same for chapter 12), *with id.* § 1306 (same for chapter 13).

[6]*Compare id.* § 541 (outlining general rules for property of estate, applicable to corporate chapter 11 debtors), *with id.* § 1115 (outlining rules for property of estate for individual chapter 11 debtors).

entity provisions and state and local taxes. *See* Pub. L. No. 95-598, § 346, 92 Stat. 2549 (1978) (enacting § 346); *id.* § 503 (enacting § 503(b)). Similarly, at the same time Congress enacted Bankruptcy Code section 1222(a)(2)(A), it also amended section 346. *See* Pub. L. No. 109-8, § 1003(a), 119 Stat. 23 (amending § 1222(a)(2)(A)); *id.* § 719 (amending § 346). We are thus justified in relying on Internal Revenue Code sections 1398 and 1399, which specifically deal with taxation in bankruptcy.

3

The Halls last rely on *Knudsen* for an argument by omission. They argue that the fact that section 1222(a)(2)(A) does not restrict itself to prepetition taxes by its express terms is significant. *See Knudsen*, 581 F.3d at 709. But that is irrelevant because the cross-references in section 1222(a)(2)(A) itself clearly lead us to the provisions that restrict their reach. *Knudsen* fails to persuade us of the Halls' view and we decline to follow it.

C

The Halls also appeal to legislative history. They first note that the Senate Report on section 503(b) states that "*administrative expenses include taxes which the trustee incurs* in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate *during the case*." S. Rep. No. 95-989, at 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852 (emphasis added). This language, they press, implies that the tax in this case was "incurred by the estate." The Halls also cite the statement of a senator speaking in favor of an unenacted provision similar to section 1222(a)(2)(A), proposed six years before that section's enactment. That senator stated that the unenacted provision was aimed at situations in which "the I.R.S. must be paid in full for any tax liabilities generated dur-

ing a bankruptcy reorganization." 145 Cong. Rec. S7520-02, 1999 WL 20426 (Jan. 20, 1999) (statement of Sen. Grassley).

**[10]** But we cannot ignore clear statutory text because of legislative floor statements. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992). Although we are sympathetic to the approach outlined by Senator Grassley, the operative language simply failed to make its way into the statute. This is confirmed when the statutory scheme is read as a whole. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1332 n.3 (2010); *United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). When we trace section 1222(a)(2)(A)'s cross-references and consider the Internal Revenue Code provisions relevant to the cross-referenced sections, it is evident to us that, as enacted, it does not apply to the postpetition tax at issue in this case. Recourse to "legislative history is unnecessary in light of the statute's unambiguous language." *Milavetz*, 2010 WL 757616, at *5 n.3.

Even if we were to consult legislative history, the statements the Halls cite are not persuasive. With respect to the Senate Report on section 503(b), the subject of the phrase the Halls quote is "trustee." S. Rep. No. 95-989, at 66. The trustee, of course, is the individual who acts on behalf of the estate. 11 U.S.C. § 323(a). When the estate acts, it is the trustee who is acting. Thus, the Senate Report's phrase "taxes which the trustee incurs" has the same meaning as the phrase "taxes which the estate incurs." This latter phrase is merely a rewording of the language in section 503(b) itself, that is, taxes "incurred by the estate."

In any event, the Supreme Court has warned us against attributing the views of one Congress to another Congress, *Massachusetts v. EPA*, 549 U.S. 497, 529-30 (2007), and against relying on interpretations of bills Congress rejects, *Doe v. Chao*, 540 U.S. 614, 615 (2004). Here, the statement

on which the debtors rely concerns an unenacted bill in a Congress convened six years prior to the one that enacted the section at issue in this case. Even if appeal to legislative history were appropriate, we are reluctant to afford it significant weight here.

It may well be that the drafter's intention for section 1222(a)(2)(A) differs from its text. *Hall*, 376 B.R. at 746; *see Collier on Bankruptcy* ¶ 503.07[2][a][i] (15th ed. 2009) (speculating that the intent behind section 1222(a)(2)(A) might diverge from its "wording"); *id*. ¶ 1222.02[2] (speculating that the "intent" behind section 1222(a)(2)(A) might diverge from the application of its text); Roger McEowen, *Chapter 12 Bankruptcy Taxation: Did BAPCPA Really Change Tax Claims to Unsecured General Creditor Status?*, at 2, Sept. 16, 2009, http://www.calt.iastate.edu/bapcpa.html (noting disparity between text and intent in section 1222(a)(2)(A)). But it is our duty to follow the text because the text is the law. Congress is entirely free to change the law by amending the text.

**REVERSED.**

PAEZ, Circuit Judge, dissenting:

I respectfully dissent. After careful consideration of the majority's analysis of the relevant bankruptcy code and IRS code provisions, I am not persuaded that § 1222(a)(2)(A) does not entitle the debtors to treat the capital gains taxes arising from the post-petition sale of their farm assets as an unsecured claim not entitled to priority under § 507. In my view, Congress's intent was clear: it wanted to help family farmers keep their farms by allowing them to sell farm assets to pay off debts without being liable for the full amount of any capital gains tax arising from the sale, regardless of whether they sold the assets before or after filing their Chapter 12 petition.

Rather than follow the course proposed by the majority, I would follow the reasoning of the Eighth Circuit in *Knudsen v. IRS*, 581 F.3d 696 (8th Cir. 2009), and the Tenth Circuit Bankruptcy Appellate Panel's recent decision in *In re Ficken*, BAP No. CO-09-042, ___ B.R. ___, 2010 WL 1837659 (10th Cir. B.A.P. 2010), to conclude that capital gains taxes arising from the post-petition sale of farm assets are dischargeable under the § 1222(a)(2)(A) exception. This approach would honor Congress's clear intent and avoid an unwarranted circuit split.