**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: DONALD W. DAWES;
PHYLLIS C. DAWES,

      Debtors,

------------------------------

UNITED STATES OF AMERICA,

      Appellant,

v.

DONALD W. DAWES; PHYLLIS C.
DAWES,

      Appellees,

and

EDWARD J. NAZAR, Trustee,

      Defendant.

No. 09-3129

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:08-CV-01054-WEB)**

---

Patrick J. Urda, Attorney, Tax Division (John A. DiCicco, Acting Assistant
Attorney General; Bruce R. Ellisen, Attorney, Tax Division; and Lanny D. Welch,
United States Attorney, with him on the briefs), United States Department of
Justice, Washington, D.C., for Appellant.

Mark J. Lazzo, Mark J. Lazzo, P.A., Wichita, Kansas, for Debtors-Appellees.

Before **TYMKOVICH, McKAY,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Can a taxpayer avoid income taxes by selling farm assets after declaring Chapter 12 bankruptcy? In at least this respect, the tax collector bears resemblance to the grim reaper: always hovering, never avoidable. While the law provides some forms of tax relief, it stops short of forgiving taxes incurred by a Chapter 12 debtor after filing a bankruptcy petition. And the taxes at issue here were incurred by the Daweses after they petitioned for bankruptcy. So it is that the Daweses must pay the tax collector his due and we must reverse.

The Daweses' struggle with the IRS has a lengthy provenance. Decades ago, and after repeated trips up and down the federal court system, the couple pleaded guilty for failing to file income tax returns in 1981 through 1983. All this is documented in no fewer than three of our published opinions. *See United States v. Dawes*, 951 F.2d 1189 (10th Cir. 1991); *United States v. Dawes*, 895 F.2d 1581 (10th Cir. 1990); *United States v. Dawes*, 874 F.2d 746 (10th Cir. 1989). But all this, as it turned out, was just the beginning. The Daweses *also* failed to pay all their taxes for still more years, including 1986–1988 and 1990. This led the IRS to seek — and ultimately obtain — a judgment declaring, first,

- 2 -

that the Daweses had fraudulently conveyed certain assets in an effort to avoid their creditors; and, second, that those unlawful conveyances were null and void. Some six years ago we affirmed this result. *See United States v. Dawes*, 161 F. App'x 742 (10th Cir. 2005) (unpublished). After and in light of this ruling the government proceeded to execute its judgment, notifying the Daweses that it intended to take possession of various pieces of their property. But before it could do so, the Daweses declared bankruptcy, seeking the protections of Chapter 12.

And that brings us to the latest installment of this epic. After declaring bankruptcy, the Daweses, with the permission of the bankruptcy court, sold several tracts of farm land. This sale, of course, created income tax liabilities. The Daweses proceeded to submit a bankruptcy reorganization plan in which they proposed to treat their newly incurred tax liabilities as general unsecured claims. As unsecured claims, the taxes would be entitled to no priority, paid only to the extent funds might be available after priority claims were satisfied, and any remaining unpaid portion would be eligible for discharge. Unsurprisingly, the IRS didn't take kindly to this proposal. It opposed the plan vigorously — but just as unsuccessfully — first before the bankruptcy court and then on appeal before the district court. The IRS now brings its complaint to this court, asking us to undo its earlier losses.

How is that the Daweses think they can defeat the IRS's tax claim? For the most part, of course, a bankruptcy filing offers scarce relief from the tax man. Other creditors may be neglected, but rarely the IRS. *See*, *e.g.*, 11 U.S.C. §§ 503(b), 507(a)(2), 507(a)(8) & 523(a)(1). Even so, the Daweses have their eye on a special provision of Chapter 12 that, they say, makes their situation special. Under § 1222(a)(2)(A), certain claims that are otherwise entitled to priority payment status under § 507, but that happen to be owed to the government as a result of the sale of farm assets, are downgraded, treated as mere unsecured claims, and made eligible for discharge. No one disputes that the taxes at issue here *are* owed to the government and *are* owed as a result of the sale of farm assets. So the only question is whether the taxes are entitled to priority under § 507. Moving to that provision, the Daweses point out that claims entitled to priority include "administrative expenses allowed under section 503(b)." 11 U.S.C. § 507(a)(2). And with this the Daweses take us next to § 503(b). That statute, they observe, speaks of "administrative expenses . . . including . . . any tax . . . incurred by the estate." 11 U.S.C. § 503(b)(1)(B)(i). Mapping their way through the thicket of the U.S. Code in this way, the Daweses argue that, because the federal income taxes at issue here are owed to the IRS as a result of a farm asset sale and were "incurred by the estate," they may be treated as general unsecured claims.

Whether this is so — whether income taxes flowing from the sale of a farm asset during a Chapter 12 bankruptcy are taxes "incurred by the estate" and so subject to downgrade and discharge — is a question that has divided our sister circuits. The Eighth Circuit says yes; the Ninth says no. *See Knudsen v. I.R.S.*, 581 F.3d 696, 710 (8th Cir. 2009); *United States v. Hall*, 617 F.3d 1161, 1163 (9th Cir. 2010), *cert. granted*, 79 U.S.L.W. 3421 (June 13, 2011) (No. 10-875). The same disagreement has beset the bankruptcy courts as well. *Compare I.R.S. v. Ficken*, 430 B.R. 663, 672 (10th Cir. BAP 2010) *and In re Schilke*, 379 B.R. 899, 903 (Bankr. D. Neb. 2007) *with Smith v. I.R.S.*, 447 B.R. 435, 447 (Bankr. W.D. Pa. 2011).

Today, we must pick sides in this debate and we side with the Ninth. Whatever other problems may lurk in the Daweses' statutory analysis (and the IRS insists there are several), post-petition income taxes incurred during Chapter 12 proceedings are liabilities of the individual debtor and *not* the bankruptcy estate. As such, they are not within the purview of the bankruptcy proceedings or included in the reorganization plan. Instead, the taxes are due from the debtor personally, and the IRS's recourse remains exclusively with the individual debtor, separate and apart from the Chapter 12 estate and unaffected by the bankruptcy discharge. That this is so is suggested by an examination of the plain language of the statute before us, the larger statutory structure, and Congress's expressed purposes.

- 5 -

To begin, the plain language of § 503(b). The Daweses' argument hinges on the term "incurred by the estate" and the submission that the post-petition income tax at issue here *was* incurred by their bankruptcy estate rather than by them personally. But what does it mean for a tax to be *incurred* by the estate? Happily, that critical term has a definition that is as well-settled as it is precise. Black's Law Dictionary tells us that to "incur" means to "suffer or bring on oneself," as in a "liability or expense." Black's Law Dictionary 782 (8th ed. 2004). Webster's says the same thing, and adds the alternate definition "[to] become liable or subject to." Webster's Third New International Dictionary 1146 (2002) (unabridged); s*ee also* 7 Oxford English Dictionary 834-35 (2d ed. 1989) ("To run or fall into (some consequence, usually undesirable or injurious); to become through one's own action liable or subject to"). While at the margin there might be some distinctions between these definitions, they don't leave any room for debate on this proposition: one who has "incurred" an expense is *liable* for it.

To determine who has "incurred" a tax, then, we must ask *who* is liable for paying it. And to answer that question we must look to the relevant tax authority. Of course, Congress is free (and in some cases has chosen) to use the bankruptcy code to control certain aspects of how federal or state tax law operates during reorganizations. But, when the code hasn't told us otherwise, our attention is rightly turned to the underlying tax law to see who owes what. Indeed,

bankruptcy law *often* relies on underlying income tax laws to assign priorities in bankruptcy. *See*, *e.g.*, § 507(a)(8)(A)(i) (treatment of pre-petition tax turns on when the tax return was due); § 507(a)(8)(B) (treatment of property tax turns on when it was last payable without penalty); § 346 (commanding that state and local income taxes be allocated between debtor and bankruptcy estate in a way that generally follows their treatment under the federal Internal Revenue Code). When the bankruptcy code defers a question to existing tax law, our role is to apply that law, not to invent new rules of our liking.

This is one of those occasions, and the relevant tax authority is the federal government itself, so we need only flip forward a few titles in the U.S. Code to see how tax liability is allocated as between debtor and estate. And there, in Title 26, the answer is plain. In individual Chapter 7 and 11 bankruptcies, the trustee is charged with filing a separate return on behalf of the bankruptcy estate and paying from that estate any resulting taxes. *See* 26 U.S.C. §§ 1398(c), 6012(a)(8), (b)(3), (b)(4), & 6151(a). There's no escaping that *those* are "taxes incurred by the estate" — the estate is obligated by federal law to pay them. But in Chapter 12 and 13 bankruptcies, the *debtor* — not the bankruptcy estate — bears the sole responsibility for filing and paying post-petition federal income taxes. *See* 26 U.S.C. § 1399; 26 U.S.C. § 6151(a); *Holywell Corp. v. Smith*, 503 U.S. 47, 52 (1992) ("The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return."). Only the debtor, not the estate, is *liable*

for the payment of these taxes. And this, in turn, answers the question posed by § 503(b): because a Chapter 12 or Chapter 13 estate isn't liable for post-petition federal income taxes, the estate does not *incur* such taxes. Those taxes aren't in the bankruptcy at all but remain the personal obligation of the debtor during, after, and apart from the bankruptcy. It's little different than when a corporate officer executes a transaction that generates a tax bill for his employer: the officer may have *caused* the tax to arise, but it is the corporation that *incurred* and is *liable* for it. Here, the markings of bankruptcy may be all over the transaction that produced the tax liability. The estate may have once possessed the farm assets in question. The bankruptcy court may have authorized their sale. And the estate might well have caused a tax liability to arise. But none of this means the estate incurs those taxes. Only the Daweses do.

The rationale for allocating tax liability like this in Chapter 12 and 13 bankruptcies appears to be a pragmatic one. Upon confirmation of a plan under those chapters, the estate property, including any post-petition income, joins the post-petition income taxes back in the hands of the debtor. *See* 11 U.S.C. §§ 1227(b) & 1327(b). Disregarding the temporary existence of a bankruptcy estate for purposes of tax liability tidies the accounting somewhat, because there's only a single return — the debtor's — that needs to be filed and kept track of. And, because Chapter 12 and 13 cases are typically confirmed quickly (at least compared to bankruptcies under Chapters 7 and 11), the expectation is that the

debtor's post-petition earnings and taxes will meet up in his hands soon enough. *See* 8 Collier on Bankruptcy ¶ 1200.01[4] (16th ed.) (noting that Chapter 12 debtor is required to file a plan within 90 days and court is required to confirm or deny that plan within 45 days); *cf.* H.R. Rep. No. 95-595, at 276 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6233 ("The administrative reality [is] that most Chapter 13 estates will only remain open for 1 or 2 months until confirmation of the plan.").

The Daweses reply to all this by urging us to follow the Eighth Circuit in reading "tax incurred by the estate" to mean "tax incurred during bankruptcy." The problem is, there's just no way to root this reading in the text of the statute. It would be one thing if we faced a difference of opinion over the meaning of the word "incurred" — facing divergent definitions, one might reasonably move on to contextual clues to determine the term's meaning. But the Daweses neither cite some authority for an alternate definition of the word "incurred" nor urge one of their own creation. And once we accept that one must be *liable* for an expense in order to have *incurred* it, it's the phrase "by the estate" that poses the problem for the Daweses. That language focuses unavoidably on the question *who* did the incurring and there's just no way we can turn it into a question about *when* a liability was incurred. Trying to do so would be like saying that the phrase "debts incurred by my wife" (*who*) means "debts incurred by either of us while we were married" (*when*). The two statements simply mean different things. The

Daweses' interpretation is thus irreconcilable with the plain language of § 503(b). *Who* does not mean *when*.

The Daweses insist that, because a bankruptcy estate can't incur taxes before it exists, the phrase "incurred by the estate" necessarily references taxes incurred post-petition. And with this much we have no objection. But the Daweses err when they take the further step of *equating* "incurred by the estate" with "incurred post-petition." The fact that a bankruptcy estate can't incur liabilities until it comes into existence doesn't mean *every* liability that arises after a petition is filed is automatically incurred by the estate and becomes its liability. Being incurred post-petition is a necessary — but not sufficient — condition for a claim to be "incurred by the estate." And the Daweses don't address the requirement that is both necessary *and* sufficient under the text of the statute — that the *estate* be liable for payment of the taxes in question.

Beyond the narrow statutory provision before us, the larger structure of the bankruptcy code casts further doubt on the direction the Daweses urge us to take. If Congress had wanted to capture all post-petition taxes in § 503(b) — if it had wanted to focus on *when* the tax was incurred rather than *by* whom — it surely knew how to do so. And we don't need to look far to find some examples. Section 503 itself addresses many expenses with regard to *when* rather than *who* incurred them. *See* § 503 (b)(1)(A)(i) ("wages, salaries, and commissions for services *rendered after the commencement of the case*") (emphasis added);

- 10 -

(b)(1)(B)(ii) (certain tax carryback adjustments "whether the [relevant] taxable year . . . ended *before or after the commencement of the case*") (emphasis added). For that matter, and in addition to taxes "incurred by the estate," § 503(b) categorizes a host of other charges based on *who* did the incurring. *See* § 503 (b)(3) ("the [following] actual, necessary expenses . . . *incurred by* [] a creditor*") (emphasis added). All this seems evidence that Congress was deliberately navigating the distinction between timing and identity when crafting § 503(b). To accept the Daweses' argument that *when* and *who* mean the same thing would require trampling these carefully delineated rules for administrative priority.

Other structural features confirm the Daweses' wrong turn. Their reading of § 503(b) would make nonsense of a central provision for paying post-petition taxes under Chapter 13. To accept that post-petition federal income taxes are "incurred" by the estate in Chapter 12 proceedings, we would seemingly need to say the same thing in the Chapter 13 context — after all, Chapter 12 is modeled on Chapter 13, and individual Chapter 12 and Chapter 13 estates are given the same treatment under the Internal Revenue Code. *See* 26 U.S.C. § 1399. But Chapter 13 explicitly allows the government the *option* of having post-petition taxes incurred by the debtor treated as part of the bankruptcy proceeding and dealt with in the reorganization plan. *See* 11 U.S.C. § 1305(a)(1). The Daweses' reading of § 503(b) forestalls that flexibility, forcing governmental claims into the bankruptcy proceedings whether the government wants them there or not. And,

beyond thwarting the choice bestowed by § 1305, the Daweses' handiwork raises an even more troubling question: what is § 1305(a)(1) doing on the books at all? If post-petition taxes are automatically included in the bankruptcy plan as taxes "incurred by the estate," then § 1305(a)(1)'s *optional* inclusion of these same claims is left loitering around the U.S. Code with no apparent purpose. So, to adopt the Daweses' reading of § 503(b), we would need to ignore "one of the most basic interpretive canons" — that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *See Corley v. United States*, 129 S. Ct. 1558, 1566 (2009) (citation omitted); *see also Bilski v. Kappos*, 130 S. Ct. 3218, 3229 (2010) ("This principle . . . applies . . . even when Congress enacted the provisions at different times.").

Equally strange things would happen to state and local income taxes. Under the Daweses' reading of § 503(b), the bankruptcy estate would of course be responsible for paying *state* income taxes incurred during bankruptcy. But the bankruptcy code specifically *prohibits* state and local income taxes from being either "taxed to" or "claimed by" a Chapter 12 estate, instead directing that these state and local taxes be the liabilities of the *debtor*. *See* § 346(b) (requiring state and local income taxes to assign liability exclusively to the debtor whenever federal income tax law does so). So, under the Daweses reading of § 503(b), the bankruptcy trustee would face conflicting instructions: § 503 would tell him to

- 12 -

pay post-petition state income taxes while § 346(b) would tell him not to do just that. Either the trustee would have to reject the Daweses' understanding of § 503(b), or he would have to turn a blind eye to another provision of the bankruptcy code.

All of these riddles disappear if we apply the plain meaning of § 503(b). Post-petition federal income taxes are not ordinarily included in the Chapter 12 or Chapter 13 bankruptcy plan because they are not "taxes incurred by the estate." Section 1305 operates to give the government the *option* of having these taxes included — though only in Chapter 13. And otherwise mixed messages about the treatment of post-petition state and federal income taxes during Chapter 12 proceedings dissipate: none is treated as "taxes incurred by the estate" and so none is payable by the trustee during the bankruptcy proceedings — a result that comports with the plain language of § 346(b) and ensures the even-handed treatment of federal and state taxes Congress clearly sought to achieve.

The Daweses ask us to look beyond the statutory text and beyond even the larger statutory structure to the statute's underlying purpose, stressing that § 1222(a)(2)(A) was enacted to provide special solicitude to bankrupt farmers. But spotting the Daweses the premise that in § 1222(a)(2)(A) Congress sought to provide tax relief to farmers does not mean their interpretation of § 503(b) ineluctably follows. Our interpretation as well gives effect and respect to the congressional purpose they identify. Ordinarily, of course, taxes are not

- 13 -

dischargeable in bankruptcy; the tax man is rarely avoidable. Yet under our interpretation of § 503(b), income taxes incurred as a result of the *pre-petition* disposition of certain farm assets *are* eligible for § 1222(a)(2)(A)'s generous rule allowing them to be treated as unsecured claims, compromised, and discharged. *See Knudsen*, 581 F.3d at 699 (applying § 1222(a)(2)(A) to pre-petition sale of slaughter hogs). Clearly, then, our reading gives respect to Congress's wish to provide a substantial form of special assistance targeted to farmers. We *only* stop short of extending § 1222(a)(2)(A)'s treatment to income taxes incurred post-petition by the debtor rather than the estate.

Neither is there any indication that this particular result is at odds with Congress's purposes. If Congress had wished to grant farmers additional relief for *post*-petition income taxes it would have needed to attend to a number of thorny issues across the bankruptcy and tax codes. For example, to prevent § 1305 from becoming a nullity, Congress would have needed either to do away with it entirely — a tectonic shift in the treatment of taxes under Chapter 13 — or give "incurred by the estate" one meaning in Chapter 12 and a different one in Chapter 13. Congress also would have needed to revise § 346 to allow the Chapter 12 trustee to pay state and local income taxes. And, having accomplished all *that*, Congress still would have needed to measure the consequences — for debtors, governments, and other creditors — of including post-petition taxes in the many Chapter 12 bankruptcies where § 1222(a)(2)(A) doesn't even apply. It is entirely

- 14 -

understandable that Congress, while intent on providing special tax relief to farmers, may not have seen fit to undertake such a large rewriting of the bankruptcy or tax codes in service of that mission — especially when *pre*-petition income tax relief could be provided surgically with the simple addition of § 1222(a)(2)(A).  After all, "'[n]o legislation pursues its purposes at all costs' without consideration of competing goals and concerns." *Hydro Res., Inc. v. E.P.A.*, 608 F.3d 1131, 1158 (10th Cir. 2010) (en banc) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 646 (1990)); John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 18 (2001) ("Because statutory details may reflect only what competing groups could agree upon, legislation cannot be expected to pursue its purposes to their logical ends; accordingly, departing from a precise statutory text may do no more than disturb a carefully wrought legislative compromise.").

The Daweses seek a final refuge in two pieces of legislative history.  First, they point to a 1978 Senate Committee Report accompanying the Bankruptcy Act that created 11 U.S.C. § 503.  That Report, the Daweses emphasize, explained that "[i]n general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case." S. Rep. No. 95-989, at 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852.  But as legislative history goes this is no smoking gun.  The report speaks only of taxes

- 15 -

*which the trustee incurs* in administering a debtor's estate. It doesn't state that the phrase "taxes incurred by the estate" turns on *when* the tax is incurred rather than *who* is responsible for paying it. It does not negate the possibility that the *debtor* may incur taxes during the bankruptcy. And it does not speak to the treatment of taxes that the debtor, rather than the trustee, incurs. Confirming the point, the mirror image committee report from the House of Representatives acknowledges that the bankruptcy estate sometimes may "not [be] a separate taxable entity," that there are cases when "any income . . . is to be taxed only to the debtor," and that "[t]he duration of a chapter 13 case is so short that there is no reason to impose a duty to pay taxes on the trustee." H.R. Rep. No. 95-595, at 277.

On the back foot, the Daweses leap forward two decades and point to a senator's floor statement made in 1999 while he was introducing a never-enacted provision similar to § 1222(a)(2)(A). The senator described his unenacted provision as aimed at remedying situations in which "the I.R.S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization." 145 Cong. Rec. S750-02, S764. The first problem with this argument, of course, is that Section 1222(a)(2)(A) wasn't adopted until six years later, in 2005 — so this floor statement might not tell us *anything* about what the Congress that *did* enact § 1222(a)(2)(A) had in mind. We suppose it's possible for a senator's remarks to linger in the hearts and minds of his colleagues and influence their work years later, but to assume as much would take us well beyond ordinary legislative history

analysis and require us to engage in the sort of "psychoanalysis of Congress" the Supreme Court has repeatedly warned against. *United States v. Public Util. Comm'n of Cal.*, 345 U.S. 295, 319 (1953) (Jackson, J., concurring); *see also Massachusetts v. E.P.A.*, 549 U.S. 497, 529-30 (2007) (warning against attributing views of one Congress to another); *Doe v. Chao*, 540 U.S. 614, 619-21 (2004) (warning against reading too much into unenacted bills). Notably, too, the remarks in question, like the Senate Report on which the Daweses rely, don't speak directly to the question whether post-petition income taxes qualify as administrative expenses under § 503(b). Neither could they have influenced or reflected the intent of the 1978 Congress that enacted § 503(b) many years *earlier*. And of course it's the language of *that* enacted statute we're tasked with construing in this case.

With the plain language and larger statutory structure pointing in the same direction, and without any convincing counter-indication in the legislative history, we hold that post-petition federal income taxes are not "incurred" by a Chapter 12 "estate" for purposes of § 503(b)(1)(B)(i). They are, instead, incurred by the Daweses personally and outside the bankruptcy. Accordingly, the Daweses' post-petition income tax liabilities at issue before us are not eligible for treatment as unsecured claims under § 1222(a)(2)(A) as currently proposed in their reorganization plan.

*Reversed.*